## Park Circuit & Realty Company v. Ringo's Guardian.

(Decided February 2, 1932.)

256

HITE H. HUFFAKER and JOHN R. MOREMEN for appellant.

WILLIAM F. CLARKE, JR., and W. W. DOWNING for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

The Park Circuit & Realty Company, a corporation, in July, 1927, owned and operated a swimming pool at Fountain Ferry Park, in Jefferson county, Ky. Its pool was 60 feet by 200 feet. Near the east end where the water was shallow a "water wheel" is located, which is used by its patrons for sporting in the water. It is located about 8 feet from the wall of the pool. To reach the wheel, a ladder extending from the bottom of the pool to the platform near the top of the wheel is used. On reaching the top, a bather may walk out on the wheel and sit, stand, or occupy it in any position he may choose. The movement of the bather starts the wheel to revolving, and carries or throws the bather as he may desire into the water. The wheel is 6 or 7 feet in diameter, 12 or 14 inches in width, with a platform from 20 to 24 inches in width extending on each side of the wheel. The wheel dips about 10 or 12 inches below the water, and extends about 9 or 10 feet above its surface.

An admission fee is charged and collected from the bathers by the appellant for their use of the pool. The appellees, Durwood W. Ringo, was in July, 1927, fourteen years old, and a frequent patron of the pool. He states that he did not use or enjoy the wheel; his sport was swimming. He had acquired the ability to swim with skill. On or about the 10th day of July, 1927, while engaged in swimming between the wheel and the wall of the pool—a space of about 8 feet—another person walked or stepped on top of the wheel. Ringo claims this person slipped "off the boards of the wheel and fell," his chin striking Ringo, his teeth cutting and lacerating the scalp an inch or an inch and a half in length, near the top of his head on the right side. Ringo claims he was thereby dazed but managed to get out, over the edge of the pool.

The question in the case of first importance is the alleged negligence, if any, of the Park Circuit & Realty Company, as the primary and proximate cause of the appellee's injury. After setting out in his petition a description of the water wheel, its size, construction, and operation, he charges that "the construction and operation of the wheel is dangerous to the life and limbs of the patrons of the defendant and to the persons using the said device," and that its use makes the swimming pool unsafe and a dangerous place; that appellant had knowl-

edge or could have had knowledge of this danger, by the exercise of ordinary care; that "a performer on the wheel slipped, fell sidewise from the said wheel, and struck his (Ringo's) head with great force and violence", which, he avers, was a consequence of the negligence of the appellant.

To prevent a recovery the appellant traversed the petition and in the second paragraph of its answer interposed contributory negligence as a defense.

At the conclusion of the appellee's evidence the appellant requested the court to give to the jury a peremptory instruction to find for it, which was refused. Its right to this instruction necessarily depends upon the evidence in behalf of appellee. A careful consideration and scrutiny of the evidence in his behalf convinces us that a peremptory instruction should have been given. The appellee is the only eye-witness to the transaction occurring at the time he received his injury. His testimony in relation thereto is in substance as follows: After engaging in diving in the deeper water, he came toward the end of the pool in the vicinity of the water wheel, and while swimming between the wheel and the wall of the pool, a young man unknown to him climbed on top of the wheel slipped, fell, and struck him on the head. To be absolutely accurate, we here give certain questions propounded to and answered by appellee, as follows:

"Q. How long has this wheel been in the pool? A. They have had it there ever since I have been going down there.

"Q. Ever since it was built? A. Yes, I had never been around it though, I didn't like the idea.

"Q. You never rode on that wheel? A. No sir.

"Q. When did you last examine the wheel in this pool? A. I don't remember that.

"Q. When did you find slime on that wheel? A. The very first time I went over there.

"Q. You don't know how long that was before this accident? A. No.

"Q. What kind of slime was there on the wheel? A. The same kind of slime that is on anything subjected to water for any length of time.

"Q. What kind of slime? A. It was colorless on top.

"Q. How thick was the slime? A. I don't know, I know it was slippery. . . .

"Q. You saw someone fall off? A. I saw somebody was coming between me and the wheel.

"Q. You saw them coming down all the way you were swimming from the top end of the pool up to the wheel? A. Yes sir.

"Q. How carefully did you observe the person who fell from the wheel or jumped from the wheel on you? A. The only time I had to see him was when he was coming down on me."

Accepting this testimony of appellee, it cannot be said that he was stating any more than merely his opinion when he stated on his examination in chief that "the boards on the wheel were slippery; that there was a kind of green, slimy substance or water growth on the wheel" at the time the person fell and struck him. His statement that he "slipped off the boards up there—fell sidewise off the wheel, . . . and struck me on the head," amounts to no more than his opinion. For the reason his testimony discloses the fact that previous to, and at the time of, the accident, the appellee had neither time nor opportunity to ascertain and to know whether the boards on the wheel were "slippery" or covered with "green" or any colored slime. It is equally as true that his statement that the person who fell upon him slipped and by reason thereof fell is not a statement of fact. It should be conceded that the opinion of this witness that the boards on the wheel were at that time covered with algae or slime and that the person slipped and fell, does not establish negligence on the part of appellant, sufficient to rest the verdict of the jury. The sudden falling of the person onto the appellee may have been caused by something other than the wheel itself or something with which appellant had no connection. Excepting the appellee's opinion, so far as the evidence shows or tends to show, the person who fell upon him might have done so of his own volition, in utter disregard of his safety or as a result of youthful aberration or from the use of spiritus frumanti or some other cause which might be conjectured by an active, diligent and fertile imagination. Under the showing made in this case, the actual real cause of the falling of the person from the wheel onto appellee is a matter of mere surmise, conjecture or speculation which is insufficient to rest a verdict upon [Wileys Adm'r v. C. & O. R. R. Co., 232 Ky. 15, 22 S. W. (2d) 263; Hanor v. West Ken-

tucky Coal Co., 241 Ky. 163, 43 S. W. (2d) 689; Fee's Adm'x v. Mahan-Ellison Coal Corp., 241 Ky. 231, 43 S. W. (2d) 681], and the circumstances show that only the person who fell could have actual, direct, positive knowledge of the real cause of his falling from the wheel. Negligence, like any other fact, may be proven by circumstances but it cannot be said that the appellee even states circumstances showing any negligence of the appellant or any tangible fact.

The appellant was only required to use ordinary care to maintain its wheel in a reasonably safe condition for its customers and to exercise ordinary care for their safety when using it or its premises. Majestic Theater Co. v. Lutz, 210 Ky. 92, 275 S. W. 16; Kroger Grocery & Baking Co. v. Monroe, 237 Ky. 60, 34 S. W. (2d) 929; Wall v. Woolworth Co., 209 Ky. 258, 272 S. W. 730; Bridgford v. Stewart Dry Goods Co., 191 Ky. 557, 231 S. W. 22; Maehlman v. Reuben Realty Co., 32 Ohio App. 54, 166 N. E. 920, 921; Higgins v. Franklin County Agricultural Society, 100 Me. 565, 62 A. 708, 3 L. R. A. (N. S.) 1132; Decatur Amusement Park Co. v. Porter, Adm'r, 137 Ill. App. 448; Greene v. Seattle Athletic Club, 60 Wash. 300, 111 P. 157, 32 L. R. A. (N. S.) 713; Turlington v. Tampa Electric Co., 62 Fla. 398, 56 So. 696, 38 L. R. A. (N. S.) 72 Ann. Cas. 1913D, 1213; Wodnik v. Luna Park Amusement Co., 69 Wash. 638, 125 P. 941, 42 L. R. A. (N. S.) 1070; Brotherton v. Manhattan Beach Improvement Co., 48 Neb. 563, 67 N. W. 479, 33 L. R. A. 598, 58 Am. St. Rep. 709; McKinney v. Adams, 68 Fla. 208, 66 So. 988, L. R. A. 1915D, 442, Ann. Cas. 1917B, 326; Larkin v. Saltair Beach Co., 30 Utah 86, 83 P. 686, 3 L. R. A. (N. S.) 982, 116 Am. St. Rep. 818, 8 Ann. Cas. 977; Frye v. Omaha & Council Bluffs St. Ry. Co., 106 Neb. 333, 183 N. W. 567, 22 A. L. R. 607; Durning v. Hyman, 286 Pa. 376, 133 A. 568, 53 A. L. R. 851; Cincinnati Base Ball Club Co. v. Eno, 112 Ohio St. 175, 147 N. E. 86.

It is plain that appellee was an "invitee" within the full meaning of that term as distinguished from a licensee. L. E. Myers' Co. v. Logue's Adm'r, 212 Ky. 802, 280 S. W. 107; Majestic Theater Co. v. Lutz, supra. As a patron of its swimming pool who paid for the privilege of the sport, the appellee was entitled to rely upon the appellant's duty to exercise reasonable care to have its swimming pool in a reasonably safe condition for the joint use of its customers; but this duty to him did not

make it an insurer of his safety. Noonan v. Sheridan, 230 Ky. 162, 18 S. W. (2d) 976.

It is not claimed that the wheel as it was constructed was inherently dangerous. It is shown that it was regularly and properly constructed, smooth of surface and up to the standard which experienced builders regard as safe and which was commonly and generally used by modern swimming pools. Majestic Theater Co. v. Lutz, supra. Certain it is that the mere fact that the top of the wheel was wet or damp from its use in the water did not render it dangerous for the use of its customers (Bridgford v. Stewart Dry Goods Co., supra), but the appellee does not predicate his cause of action on the dampness of the wheel arising from its use in the water. It is his theory that the presence of the slimous condition of the wheel precipitated the person who fell upon him. His statement that he had not examined the wheel and that he only saw slime on it "the first time he went over there," coupled with his statement "the only time he had in which to see the person fall was when he was coming down on him," shows that his statement "that there was slime on the wheel" which caused the person to fall on him is a supposition. Parsons v. Baltimore B. & L. Ass'n, 44 W. Va. 335, 29 S. E. 999, 67 Am. St. Rep. 769; Wright v. Conway, 34 Wyo. 1, 241 P. 369, 242 P. 1107. "A supposition is a conjecture based on the possibility that a thing could have happened. It is an idea or a notion founded on the probability that a thing may have occurred, but without proof that it did occur." Louisville & N. R. R. Co. v. Mann's Adm'r, 227 Ky. 399, 13 S. W. (2d) 257, 258; Cochran's Adm'rs v. C. & O. R. R. Co., 232 Ky. 107, 22 S. W. (2d) 452.

The appellee's suspicion or conjecture as to what caused the person to fall from the wheel and injure him was not sufficient to constitute evidence to take the case to the jury. Burdon v. Burdon's Adm'x, 225 Ky. 480, 9 S. W. (2d) 220. The appellant is not liable to the appellee for another patron of its pool falling on, and injuring him, unless his precipitation was caused by the presence of the slimous condition of the wheel. To entitle him to recover it was incumbent upon him to establish by competent evidence that the negligence of appellant was the proximate cause of his injury, i. e. the "natural and continuous sequence, unbroken by any independent responsible cause, produced the injury, and without which it

would not have occurred." Kentucky T. & T. Co. v. Roman's Guardian, 232 Ky. 288, 23 S. W. (2d) 272, 273; Wright v. L. C. Powers & Sons, 238 Ky. 572, 38 S. W. (2d) 465. The burden was on the appellee to show that his injury was the direct and proximate result of some negligence on the part of defendant, and where there is a total failure of proof of negligence or no room for reasonable inference that the proven negligence had any causal connection with the injury, there is no evidence of proximate cause upon which the jury may base its verdict. Gatliff Coal Co. v. Sumner, 196 Ky. 592, 245 S. W. 144; Kelly & Shields v. Miller, 236 Ky. 698, 33 S. W. (2d) 662. In the absence of more substantial evidence than the mere opinion of the appellee, it cannot be considered that there was that character of substantive evidence, necessary to require the submission of the case to the jury. Broyles v. Able, Jr., Adm'r, 208 Ky. 672, 271 S. W. 1040.

" 'Evidence,' within the meaning of the rule requiring questions of fact to be submitted to the jury, if supported by a scintilla of evidence, is something of substance, and not mere vague, uncertain, or irrelevant matter, not carrying the quality of proof, or having fitness to induce conviction." Newman v. Dixon Bank & Trust Co., 205 Ky. 31, 265 S. W. 456, 458; Browning v. Nevils, 207 Ky. 308, 269 S. W. 341; Standard Accident Ins. Co. v. Strunk, 220 Ky. 256, 294 S. W. 1085.

Wherefore the judgment is reversed for proceedings consistent herewith.