BEVERLEY BEACH CLUB, INC., *v.* CYRIL Q. MARRON

[No. 24, April Term, 1937.]

*Decided May 24th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Robert E. Coughlan, Jr.,* for the appellant.

*John D. Alexander* and *Edward A. Smith,* with whom was *Wm. Pepper Constable* on the brief, for the appellee.

JOHNSON, J., delivered the opinion of the Court.

The sole question presented by this appeal is whether the evidence offered by appellee was sufficient to justify the submission of his case to the jury. The lower court answered that question affirmatively by refusing at the close of plaintiff's case appellant's prayer, which was a demurrer to the evidence. Appellant offered no testimony, and the present appeal is taken from a judgment entered by the court upon the jury's verdict. The action was in tort, recovery being sought for injuries

sustained by appellee while bathing at Beverly Beach, in Anne Arundel County, by reason of appellant's alleged negligence in its maintenance.

The facts are free from dispute. Appellant operated Beverly Beach, a public resort on the Chesapeake Bay. Upon the high land there were various amusements and places where refreshments, including soft drinks, were sold, likewise tables for use of patrons visiting the beach. Adjoining the high land, an area from three to four acres, covered by waters of the bay, was upon three sides protected by a wire fence, the meshes of which were one-half inch in size. This fence extended from the water to the sand beneath, while the side near the high land was also inclosed by a similar fence, through which there were two openings sixty yards apart, each about six feet in width, and through these bathers entered and returned from the water. On the afternoon of July 13th, 1935, appellee, accompanied by his wife, child, and three other friends, motored to the beach, where they parked their cars and paid a parking charge for the privilege. After paying the customary charges for use of lockers, towels, and bathing equipment, they undressed and passed through one of the fence openings and into the water. They swam for approximately fifteen minutes, later taking the child back to the water's edge, and, after securing her beach ball, she, appellee, and Mr. Judson began playing "three-ring" ball. At that time they were in water six inches in depth and six feet from the shore. Mr. Judson made a "wild throw" of the ball and appellee, while reaching out for it, had his foot cut by some object beneath the water. The injury was severe and painful, requiring him to undergo hospitalization. The wound was "clean," shaped like part of semi-arc, but deep enough to sever arteries and tendons near the large toe. At the time he sustained it, he was standing opposite one of the entrances through the fence. There were several other bathers in the water and a fair-sized crowd upon the high land. Nothing definite is shown as to the character of the object injur-

ing him, neither is anything known as to how long it had been in the water, nor under what circumstances it was placed there, but it is conceded that the point where appellee was standing when he contacted it was covered by water, even at low tide. It is also conceded that appellee's status at the time he was injured was that of a business invitee, but he seems to have assumed that his foot was cut by a broken bottle, simply upon a showing that soft drinks were sold visitors, who were permitted to take them from the stands, and that, because he proved by one witness that three days a week he with others was employed in cleaning up the picnic ground by removing trash, in which at times there were broken glass bottles, and the same witness further stated he made no inspection of the bottom of the bay which was set apart for bathers, this was sufficient to justify an inference that appellant breached a duty owed appellee of inspecting the bottom of the bathing area, or that failure to do so imposed a duty upon him of giving bathers a timely warning that such inspection had not been made and they must assume the risk of such failure to inspect. But this argument entirely overlooks the fact that there is no evidence that plaintiff's injury was caused by a broken bottle. This may have been the cause, but it is equally possible that the object causing the injury was imbedded in the sand until by appellee's undue exertion in catching the wildly thrown ball he came in contact with it. In such case an inspection of the bottom of the bathing area would not have revealed its presence. The argument also ignores the presence of the fence appellee maintained in front of the bathing area, which undoubtedly was intended to prevent broken bottles or other foreign objects from getting into the water. But if it could be assumed that appellee was in fact injured by a broken bottle placed there by other bathers, we would still be confronted with the difficulty as to when it was placed there. Certainly appellant owed no duty to any one of inspecting the bathing bottom hourly, and the location of the objectionable

object, being at all times covered by water, could not be seen, hence it is not shown that an inspection would have revealed it. The evidence, therefore, is insufficient to charge appellant with constructive notice of its presence, and it is not contended it had any actual notice.

Appellee further contends that the duty of inspecting the bottom of the bathing beach was imperative, because of a statement made by the witness, Mrs. Judson, that she had observed signs on the road from Washington to Beverly Beach, which advertised it as a "safe" beach, and, when appellant objected to this line of testimony, the court replied, " 'safe' beach may mean anything." Appellee's counsel then announced he intended to follow up the statement of the witness, presumably by showing exactly how the signs read, but this he failed to do. He further contends that the admission of the hospital records is some evidence of the fact that his injuries were caused by broken glass, because the report shows that he stated his foot was cut by broken glass. The report was admitted in evidence under section 54A of article 35 of the Code (Supp. 1935), but it was not the purpose of the statute to create facts which did not exist, and appellee himself testified he did not know what caused his injury.

We are of the opinion that the duty which appellant owed appellee as its business invitee was that of keeping its premises in a reasonably safe condition for those visiting them pursuant to its invitation; that it is not an insurer of the safety of those attending, but was bound to use ordinary care for their safety and protection, for, as this court said in *New Theater Co. v. Hartlove*, 123 Md. 78, 90 A. 990, 991, "The proprietor of a theater or other place of public amusement, to which the public is invited and admission charged, is under an obligation to use ordinary care and diligence to put and keep the place in a reasonably safe condition for persons attending in pursuance of such invitation. He is not an insurer of the safety of persons attending, but he is bound to use ordinary care for their safety and

protection, and if an injury results from a breach of this duty, he is liable." See, also, 20 *R. C. L. "Negligence,"* par. 51; *Fulton Bldg. Co. v. Stichel,* 135 Md. 542, 109 A. 434; *Pinehurst Co. v. Phelps,* 163 Md. 68, 160 A. 736, and authorities there cited; *Reed v. Baltimore,* 171 Md. 115, 188 A. 15; *Harford Agricultural & Breeders' Assn. v. Brown,* 166 Md. 262, 170 A. 782; *Waddel's Admr. v. Brashear,* 257 Ky. 390, 78 S. W. (2nd) 31; Annotation, 98 *A. L. R.* 558; 45 *C. J. "Negligence,"* page 823 (235) 2; *Restatement of Law of Torts,* sec. 341; *Cooley on Torts,* sec. 440.

An examination of *Boyce v. Union Pac. Ry. Co.,* 8 Utah, 353, 31 P. 450; *Skelly v. Pleasure Beach Park Corp.,* 115 Conn. 92, 160 A. 309; *Maehlman v. Reuben Realty Co.,* 32 Ohio App. 54, 166 N. E. 920; *American Stores Co. v. Murray* (C. C. A.) 87 Fed. (2nd) 894, and other cases, relied upon by appellee as authority for the contention that the evidence offered by him is sufficient to raise an inference of negligence in this case and therefore justify its submission to the jury, discloses facts and situations not here presented. Those decisions, therefore, are neither persuasive nor controlling in this case.

In our judgment, the evidence is legally insufficient to justify an inference that appellant breached any duty it owed appellee, and we feel that a contrary holding would, upon the facts here presented, be tantamount to declaring that appellant was in fact an insurer of its patrons, which is not the case. Therefore, appellant's prayer which challenged the legal sufficiency of the evidence should have been granted. The judgment appealed from must be reversed, without a new trial.

*Judgment reversed, with costs to appellant.*