## Siler v. Renfro Supply Company et al.

(Decided March 18, 1930.)

488

R. L. POPE and C. B. UPTON for appellant.

TYE, SILER, GILLIS & SILER for appellees.

OPINION OF THE COURT BY COMMISSIONER STANLEY—
Affirming.

This is an appeal by a plaintiff from a judgment against him in an automobile damage suit. The appellant, Charles Siler, was in his automobile being driven by a brother, Homer Siler, and in which two other men were riding. They started out in a machine to look for some escaped prisoners with whom the other two men in the car had been confined in jail and who were, as plaintiff says, taken along as decoys. It does not appear that plaintiff was an officer. As they were driving along, they saw coming down an intersecting road another car in which they thought the fugitives might be riding. This car reached the intersection before plaintiff's machine, and he undertook to pass it that he might observe its occupants.

The testimony introduced in behalf of appellant was that his car was driven up behind the other one and he blew his horn as a signal to let him pass, but instead it increased its speed. He continued in pursuit and once or twice more he made the same effort to pass. The road was very narrow and very dusty, being an abandoned railroad bed with only a cinder surface. Just before the accident, in which plaintiff sustained severe injuries, his car was driven close up behind the other rapidly moving car and his horn was again blown. The front car pulled over to the right for him to pass, and just as he drew to the left in an attempt to pass, without warning or signal it suddenly pulled back in the center of the road, and

this forced appellant's car to be suddenly turned to the right and run across the road into an embankment.

On the other hand, it is shown that the appellee John Murphy was a traveling salesman employed by his coappellee, the Renfro Supply Company, and that he was out calling on the trade. Murphy testified that shortly after he entered the road, as above described, a car drove up behind him and blew the horn as a signal of the desire to pass; that since he intended stopping at a store some three-quarters of a mile away and the road was narrow, he speeded up to about 35 miles an hour and drove on; that he received no other signal and had no knowledge that the car was trailing him; that as he was driving along in the center of the road he encountered some cattle which partly blocked the way; that he turned his car slightly to the left so as to give them ample room, passed around them, and drove on to his immediate destination. He there heard of the accident when Homer Siler walked up and told him that he wanted to telephone for a doctor. Murphy went back up the road in his machine and took the appellant and his brother to a physician.

It is further shown in the evidence that Murphy told appellant that he had turned to the left to prevent the passing of the car, as he thought it was some one else who was trying to stir up the dust which "he didn't aim to eat," and that the cattle were passed before the accident occurred. This was denied. Appellant and his brother deny that they had more than a taste of liquor during the day, but it appears that one of the other men, at least, was somewhat intoxicated.

■ The foregoing statement of the evidence, we think, is sufficient answer to the claim that the verdict was the result of "passion and caprice" and palpably against the evidence, as is argued by the appellant.

■ Appellant offered to prove that his brother, Homer, was a careful driver, and says that the rejection of this evidence is reversible error. His counsel is astounded and insists that such evidence is always competent, and, though submitting no authority to sustain his statement, he challenges his adversary to submit a single authority upholding this ruling of the trial court. This the latter proceeds to do by referring to 42 C. J. 1220; Babbitt's Law of Motor Vehicles, p. 1322; and Louisville Lozier Co. v. Sallee, 167 Ky. 499, 180 S. W. 841. He might also have cited, among other authorities,

490

Berry on Automobiles, sec. 164; Blashfield's Cyclopedia of Automobile Law, p. 1675; and Louisville & N. Railroad v. Adams, 205 Ky. 203, 265 S. W. 623, in which four other opinions of this court are referred to. The evidence was clearly incompetent, for no matter 'how careful one may be on other occasions or how good a reputation he may have in that regard, the question always is was he careful or negligent on the particular occasion under inquiry.

■ It is contended that the whole law of the case was not given because all the reciprocal duties of the parties in operating the automobile on the highway were not covered by the instructions and that the instruction which was given was too abstract. It was not necessary to embody all the various duties resting upon the operator of a motor vehicle, for the issues did not demand it. Such duties as the evidence discloses were involved were aptly and concretely covered. Louisville Auto Supply Co. v. Irvine, 212 Ky. 60, 278 S. W. 149.

■ The claim that the admission of the defendant that he was driving his car at the speed of 35 miles an hour is prima facie evidence of negligence is hardly a consistent one on the part of the plaintiff, for he also admitted that he too was running at least that fast, for he overtook the other car and thought that he could pass it. Citation is made of section 2739g-51 of the Statutes (1922 edition) as prescribing a speed not in excess of 30 miles an hour. That was once the law (qualified), but since the amendment of 1926 (Acts 1926, c. 113, sec. 4), to constitute prima facie negligence, the speed of a car in the open country on a straightaway, unobstructed highway must be more than 40 miles an hour. See section 2739g-51 of the 1930 Edition of the Statutes.

■ Counsel also argues that it was error to give an instruction on contributory negligence of the plaintiff because there was no evidence warranting it. No such instruction was given according to the record before us. It is true that in the instruction defining terms used "contributory negligence" was included, but since there was no instruction on that issue given, that portion of the definition was superfluous. Certainly, it was harmless.

Perceiving no prejudicial error in the record, and it appearing that the appellant has had his case fairly tried, the judgment is affirmed.